UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MARK B. BLACKWELL,

     Plaintiff,

v.

LISA NOCERINI, RYAN STRONG,
FINLEY CARTER AND THE CITY
OF WAYNE,

     Defendants.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff Mark B. Blackwell states as follows as his Complaint against Defendants Lisa Nocerini, Ryan Strong, Finley Carter and the City of Wayne.

## INTRODUCTION AND SUMMARY

1.     In this action, Plaintiff Mark Blackwell asserts claims under the First, Fourth and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. § 1983. Prior to and at a public session of the City Council of the City of Wayne on January 8, 2019, Plaintiff Mark Blackwell, a citizen of Wayne, implored the Wayne City Council to review and follow the recommendations of an employment expert hired by it to evaluate management personnel and the functioning of city government. That expert found serious problems with city

management, especially with the actions of the City Manager Lisa Nocerini. Based largely on that report, on January 8, 2019, at the public comment session of Wayne City Council, Mark Blackwell urged the City Council to terminate the services of City Manager Lisa Nocerini.

2.     Within days of Blackwell's comments at that January 8, 2019 City Council meeting, Nocerini pressured acting Police Chief Ryan Strong to investigate Mark Blackwell and to charge him with a crime.  Strong responded by personally investigating Blackwell and also directed that Defendant Finley Carter, a lieutenant with the Wayne Police Department, do so.  As a result of the actions of Nocerini, Strong and Carter, Blackwell was then charged with stalking Nocerini and creating a disturbance at a public meeting.  No factual or legal basis existed for either charge and probable cause was absent.  The sole reason for such action was to stifle Mark Blackwell's free speech and to retaliate against him for calling for Nocerini's termination on January 8, 2019.

3.     The charge of creating a disturbance was dismissed before trial. Blackwell was found not guilty at trial on the stalking charge.  The trial judge, the Hon. Richard L. Hammer, Jr., found that all of the conduct claimed to constitute stalking was protected by the First Amendment of the Constitution, occurred at city hall or in connection with city business, and, in any event, could not have caused emotional distress in a reasonable person.

4.      The unsuccessful criminal prosecution of Blackwell and related actions of the Defendants violated Blackwell's rights under the First, Fourth and Fourteenth Amendments.  This action seeks redress for such unlawful conduct.

**PARTIES**

5.      Plaintiff Mark B. Blackwell is an individual that resides in the City of Wayne, Wayne County, Michigan.

6.      Defendant Lisa Nocerini is an individual that is employed by the City of Wayne or who works as its City and Manager.  Nocerini is being sued in her individual capacity.

7.      Defendant Ryan Strong is employed by the City of Wayne as its Police Chief.  Strong is being sued in his official capacity and in his individual capacity.

8.      Defendant Finley Carter is employed by the City of Wayne as a Lieutenant in its police Department.   Carter is being sued in his individual capacity.

9.      Defendant City of Wayne is a municipal corporation located in Wayne County, Michigan.

## VENUE AND SUBJECT MATTER JURISDICTION

10.    This Court has subject matter jurisdiction because this action arises under the Constitution and laws of the United States, including 42 USC § 1983, giving rise to jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

11.    Venue is proper under 28 U.S.C. § 1391 because all Defendants reside in this district and because all of the events giving rise to Plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

12.    In 2018, numerous reports were made to the Wayne City Council that the work environment at city hall was divisive and hostile, and had caused resignations by city employees, a decline in morale within city government, and negatively affected city operations.

13.    To examine whether there was any validity to those reports, the City Council retained an independent expert in employment matters, Richard Hurford, to conduct an immediate, through and objective investigation of the work atmosphere and working conditions at City Hall.  This retention occurred on or about June 19, 2018.

14.    From June 19, 2018 to August 1, 2018, Hurford interviewed 17 employees and reviewed hundreds of documents.

4

15.     On information and belief, Hurford was paid in excess of $25,000 for his work for the City of Wayne.

16.     On August 8, 2018, Hurford provided two written reports to the mayor and Wayne City Council, totaling 32 pages.  His findings included the following:

  a.  The City's workforce suffered from poor morale (p. 5).

  b.  There was a failure of leadership by Nocerini as city manager (p. 15).

  c.  The city management team, led by Nocerini, demonstrated a lack of respectful behavior toward each other (p. 12).

  d.  There was a perception of favoritism by the city manager Nocerini towards certain employees (p. 13).

  e.  There is and was an absence of trust between city management team and city council (p. 13).

  f.  Only two of the seven members of the city management believed Nocerini had the capability to implement the necessary change within city administration (p. 5).

  g.  Almost all employees interviewed express concern over the lack of trust within city administration (p. 5).

h. The city management team, led by Nocerini, was not performing as a high functioning team and the status quo could not be sustained long term (p. 12).

17.     On August 20, 2018, Hurford provided a supplemental report to the mayor and City Council.  That report described the actions at City Hall by Nocerini on August 11, 2018, which was a Saturday when city hall was closed.  Based on a review of videotape and other evidence, Hurford described in detail how Nocerini was at city hall for nearly six hours on that Saturday.  Nocerini rarely if ever appeared at city hall on a Saturday.  A private investigator retained by Nocerini joined her for part of the time.  While at city hall, Nocerini covered the window on the door to her office with paper, made frequent trips to the copy machine, and was witnessed leaving city hall with a computer case.  Hurford made numerous recommendations to City Council to question Nocerini regarding these activities and to consider taking action again Nocerini.

18.     Following the issuance of his reports by Hurford, Blackwell publicly advocated for City Council to follow the report and recommendations of Hurford. Citing Hurford's reports, Blackwell requested that City Council consider a change in the city manager including terminating Nocerini's employment.  Blackwell communicated these concerns and issues during public comment during city council meetings and outside of such meetings.

19.     Nocerini attempted to stifle the criticism of Blackwell directed at her especially Blackwell's call for her employment to be terminated.  She did so in 2018 by, among other things, attempting to convince then Police Chief Maciag to charge Blackwell with a crime.

20.     Abraham Hughes is a police officer employed by the City of Wayne and has been since February 2002.  In a federal court lawsuit filed by Hughes in the U.S. District Court for the Eastern District of Michigan, Hughes asserted the following:  "The warrant request [to charge Blackwell] was the result of personal intervention by Acting Chief Strong on behalf of a complaint by Nocerini. Nocerini had been a frequent target of citizen Mark Blackwell's protected speech, criticizing her job performance.  Others, including Chief Maciag, had refused Nocerini's request to prosecute Mr. Blackwell for harassing her."  (Complaint, ¶ 18, Case No. 21-cv-11443).

21.     On or about December 18, 2018, Police Chief Maciag resigned.  At the urging of Nocerini, City Council appointed Ryan Strong interim police chief.

22.     On January 8, 2019, the city council of the City of Wayne met in public session.  During the public comment portion of the meeting, Blackwell urged City Council to take note of the resignation of numerous city employees due to morale issues, which included the resignation earlier that day of City Clerk Matt Miller.  Blackwell also urged the city council to review the reports made by the

7

independent expert Richard Hurford hired by the city.  Blackwell repeatedly stated that the solution to the problems with city administration was to terminate the services of Nocerini.

23.    All of Blackwell's comments and actions at the public session were protected by the First Amendment.

24.    Within a few days after the January 8, 2019 meeting of the City Council, Nocerini urged the newly-appointed acting Police Chief Ryan Strong to investigate Mark Blackwell.  At the time, Ryan Strong was pursuing the police chief position for the City of Wayne on a permanent basis and sought the support of Nocerini for that position.

25.    In an effort to have criminal charges brought against Blackwell, Nocerini related the following events to Strong in January 2019 after the January 8, 2019 city council meeting at which Blackwell spoke.

26.    Nocerini informed Ryan Strong in January 2019 that at an unknown date in 2016, Mark Blackwell observed and may have taken photos of Nocerini campaigning for the voter approval of a millage for police and fire services. Nocerini has never been a resident or taxpayer of Wayne so her campaigning for the passage of the millage was noteworthy to Blackwell and likely other citizens. Blackwell's observance of such campaigning was conduct protected by the First Amendment.  He did not take photos of Nocerini as she claimed he did but, in any

effort, photo-taking of a public official campaigning is conduct protected by the First Amendment.  On information and belief, Nocerini did not report this event to the police at the time it occurred or at any time from when it supposed occurred in 2016 until after the January 8, 2019 city council meeting described above when Blackwell advocated for her termination.

27.    Nocerini informed Ryan Strong in January 2019 that at another unknown date in 2016, Nocerini was contacted by phone by a co-employee and told that Mark Blackwell was driving two cars behind her traveling south on Wayne Road.  After receiving the phone call, Nocerini turned into city hall and then saw Blackwell continue south on Wayne Road.  Blackwell does not recall this incident.  Blackwell frequently travels south on Wayne Road near city hall because he lives nearby and Wayne Road is a main access road in the area.  Blackwell had a legal right to travel on Wayne Road.  On information and belief, Nocerini and the employee who telephoned her on that day did not report this event to the police from when it supposed occurred in 2016 until after the January 8, 2019 city council meeting described above when Blackwell advocated for Nocerini's termination.

28.    Nocerini informed Ryan Strong that Mark Blackwell was often present in the parking lot of city hall with other individuals after City Council meetings or while city hall was open for business.  The gathering of those individuals, because it was done in connection with city council meetings and city

business, is conduct protected by the First Amendment.  These gatherings were not reported by Nocerini to the police until after the January 8, 2019 city council meeting when Blackwell advocated for her termination.

29.    On or about February 5, 2019, Lieutenant Finley Carter was assigned by Chief Ryan Strong to continue the police investigation of Blackwell.

30.    Strong and Carter also met with other employees and elected officials between January 8 and February 12, 2019.  Those individuals added no additional information to what is described above.

31.    On information and belief, Strong and Carter relied on no other information in decided to press charges.

32.    On or about February 12, 2019, Lieutenant Carter completed a warrant recommendation and forwarded it to the Wayne County Prosecutor's Office.  On information and belief, before doing so, Lieutenant Carter contacted Ryan Strong who recommended or directed that he do so.  On information and belief, before doing so, Lieutenant Carter and/or Ryan Strong spoke with Nocerini, who urged one or both of them to charge Mark Blackwell with a crime.

33.    On March 11, 2019, the Wayne County Prosecutor's Office approved the criminal complaint against Mark Blackwell which charged him with stalking under MCL 750.411h and disturbing a public event under MCL 750.170.  The maximum penalty for each of those charges was one year and 90 days in jail.

34.    At no point prior to deciding to pursue criminal charges or the issuance of the criminal complaint did Strong or Carter speak or otherwise communicate with Blackwell to obtain his version of the events.  The first contact by Strong, Carter or by the Wayne Police Department to Blackwell for their investigation of him was when Carter telephoned him on March 12, 2019 to inform him that he had been charged with a crime and that he had to turn himself in for booking.

35.    Blackwell voluntarily surrendered on the same day that he was contacted and was then arrested, charged, fingerprinted and had a booking photograph taken.

36.    Probable cause did not exist at the time that Blackwell was charged, or at any other time, for stalking (MCL 750.411h) because the conduct relied upon for the charges was conducted protected by the First Amendment or conduct that served a legitimate purpose.  The statute for stalking specifically provides that constitutionally protected conduct and conduct that serves a legitimate purpose cannot be the basis of a stalking charge.

37.    Moreover, probable cause did not exist for the stalking charge because no reasonable person would have felt emotional distress or terrorized, frightened, intimidated, threatened, harassed or molested by the conduct of Blackwell and Nocerini did not do so.

38.     Probable cause did not exist at the time that Blackwell was charged, or at any other time, for disturbing the peace (MCL 750.170) because that statute has been repeatedly found unconstitutional and because the conduct upon which the charges were based was protected by the U.S. Constitution.  Moreover, there was and is no factual basis for the allegation that Blackwell made or excited a disturbance or contention at any public meeting or otherwise engaged in conduct that fulfilled the elements of that statute.

39.     Before trial, the prosecutor dismissed the charge for disturbing the peace under MCL 750.170 because there was no evidence to support it.

40.     On October 4, 2019, the trial of Blackwell occurred.  The trial judge was Judge Richard L. Hammer, Jr.  The only charge was stalking.  Judge Hammer found Blackwell not guilty.  The basis of the finding of not guilty was that the actions of Blackwell were constitutionally protected.  Judge Hammer also found that Blackwell was "not doing anything out of the norm," that "there was no alleged conduct outside of city business or outside of city property," and that the elements of the stalking crime could not be proven because it was not reasonable for a person to feel emotionally distressed" based on Blackwell's conduct.

## COUNT  I - RETALIATION FOR EXERCISE OF
## FIRST AMENDMENT RIGHTS - SECTION 1983

41.     Blackwell incorporates by reference the preceding allegations.

12

42.     The actions, speech and assembly of Blackwell alleged above were and are protected by his rights under the First Amendment of U.S. Constitution. These rights were clearly established as of and long before when Blackwell exercised them.

43.     Defendants sought to unlawfully interfere with Blackwell's clearly established rights under the First Amendment by pursuing and causing others to pursue criminal charges against Blackwell.

44.     Defendants' adverse actions injured Blackwell by subjecting him to criminal prosecution, deprivation of liberty and by restraining, preventing, and impairing his right to free speech in a way likely to chill a person of ordinary firmness from propounding further lawful speech.

45.     Defendants were motivated to take these adverse actions in whole or in part because of Blackwell's constitutionally protected speech.

46.     Probable cause was lacking to charge Blackwell with any crime.

47.     In the event that probable cause is found to have existed, the conduct engaged in by Blackwell and relied upon by the City of Wayne to charge Blackwell with a crime was also engaged in by other individuals who were similarly situated.  Such other individuals had not engaged in the same sort of protected speech as Blackwell and they were not charged with a crime.  The reason Blackwell was charged with a crime was because of Defendants' intent to retaliate

13

against him for the exercise of his constitutional rights to advocate for the termination of Nocerini.

48.     Defendants' adverse actions violated Blackwell's clearly established First and Fourteenth Amendment rights, and were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

49.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has been damaged.

**COUNT  II – VIOLATION OF THE
FOURTH AMENDMENT - SECTION 1983**

50.     Blackwell incorporates by reference the preceding allegations.

51.     Defendants violated Blackwell's clearly established right to be free from unreasonable seizures by unlawfully causing a criminal prosecution to be instituted against him.

52.     Specifically, Defendants caused Blackwell to be charged with two crimes.

53.     Defendants lacked probable cause to initiate the criminal proceedings and the criminal proceedings ended in Blackwell favor.

54.     During the criminal proceedings, Blackwell suffered a deprivation of liberty in the form of, among other things, restrictions against appearing at city hall except if 48 hour advance notice is given and only for certain events.  Additional

14

deprivations of liberty included restrictions against his First Amendment rights to witness and take photographs or video of public officials.

55.    Defendants' adverse actions violated Blackwell's clearly established Fourth and Fourteenth Amendment rights, and were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

56.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has been damaged.

**COUNT  III – VIOLATION OF THE**
**EQUAL PROTECTION CLAUSE OF**
**THE FOURTEENTH AMENDMENT - SECTION 1983**

57.    Blackwell incorporates by reference the preceding allegations.

58.    Defendants' actions to prosecute Blackwell, or to cause the prosecution of Blackwell, was done to deter Blackwell from exercising his First Amendment right to speak out against Wayne city government and Nocerini and to retaliate against him for doing so.

59.    Other individuals who had engaged in the same conduct upon which the criminal charges against Blackwell were based but who had not spoken out against Wayne city government and Nocerini in the manner and to the extent that Blackwell were not charged with any crimes.

60.    Such discriminatory treatment of Blackwell was because of his exercise of his First Amendment rights as discussed above.  The purpose and effect of Defendants' actions was to burden his exercise of such fundament rights.

## COUNT IV - MONELL LIABILITY

61.    Blackwell incorporates by reference the preceding allegations.

62.    During the relevant time period, Ryan Strong, because of his position as acting Police Chief of the City of Wayne, was a person vested with final decision-making authority on behalf of the City of Wayne as to the pursuit of criminal charges against an individual such as Blackwell.

63.    Strong, in his final decision-making authority capacity, directed, approved, and ratified the charging of Blackwell with the criminal offenses of stalking and disturbing the peace which violated Blackwell's constitutional rights.

64.    The violation of Blackwell's constitutional rights resulted from the actions taken, directed, approved and ratified by Strong on behalf of the City of Wayne.

65.    The City of Wayne failed to provide any training for its police officers as to the constraints imposed by the First Amendment in determining whether an individual situated such as Blackwell should be charged with a crime and whether probable cause existed to do so.

66.    In particular, the City of Wayne has failed to provide necessary training to ensure that its police officers do not rely on conduct protected by the First Amendment when determining probable cause.  The lack of such training constitutes deliberate indifference on the party of the City of Wayne.  Such inadequate training was closely related to or actually caused the injury complained of in this action to Blackwell because had such training been provided then Strong and Carter would have determined that all of the conduct upon which Nocerini complained of and attributed to Blackwell was conduct protected by the First Amendment and could not be relied upon to find probable cause for the charges made against Blackwell.

67.    Defendants' adverse actions violated Blackwell's clearly established constitutional rights and were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

68.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has been damaged.

## RELIEF REQUESTED

Plaintiff requests the following relief:

A.    Declare that the conduct of the Defendants violated Blackwell's rights under the U.S. Constitution;

17

B.      Award all actual, special, punitive and/or exemplary damages as provided by in 42 U.S.C. § 1983 and other applicable law in an amount to be proved at trial;

C.      Award interest, costs, reasonable attorney fees, and expert witness fees, pursuant to pursuant to MCL 42 USC § 1988 and other applicable law; and

D.      Grant or award such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

TIMOTHY E. GALLIGAN PLLC

By:    /s/ Timothy E. Galligan
        Timothy E. Galligan (P51768)
        39 South Main St., Suite 24
        Clarkston, MI 48346
        (248) 241-6179
        galligan@galliganpllc.com
        Attorney for Plaintiff Mark B.
        Blackwell

Dated:  July 23, 2021